UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

Case No. 09-61625-CIV-COHN/SELTZER

ALLISON NELSON, on Behalf of Herself         )
and All Others Similarly Situated,           )
                                             )
Plaintiff,                                   )
                                             )
vs.                                          )        **CLASS ACTION**
                                             )
MEAD JOHNSON & COMPANY,                      )
                                             )
                    Defendant.               )
                                             )
                                             )
_____          )


**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

<u>TABLE OF CONTENTS</u>

<u>PAGE</u>

I.      INTRODUCTION ........................................................................................................ 1

II.     PLAINTIFF SATISFIES THE TYPICALITY REQUIREMENT
        OF RULE 23(a)(3) ..................................................................................................... 2

        A.    Plaintiff's Claims Are Timely ...................................................................... 3
        B.    Plaintiff Purchased Enfamil® LIPIL® - The Product At Issue
              in This Case ................................................................................................... 3

        C.    Plaintiff Saw the Deceptive Developmental Benefits Representations
              and Purchased the Higher Priced Enfamil® LIPIL® based on its
              Supposed Superiority .................................................................................... 4

        D.    Mead Johnson's Deceptive Superiority Message is Not Based
              Solely on Its  "Clinically Proven" Misrepresentation ................................. 6

III.    PLAINTIFF SATISFIES THE PREDOMINANCE REQUIREMENT OF
        RULE 23(b)(3) ........................................................................................................... 7

        A.    Causation Issues May Be Resolved on a Classwide Basis ........................... 8
        B.    Damage May Be Determined On an Aggregate Classwide Basis ............... 11
        C.    Existing Case Law Supports A Predominance Finding ............................... 12

IV.     CONCLUSION ......................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**                                                                                                                    PAGE

*Allapattah Servs. v. Exxon Corp.*
    333 F.3d 1248 (11th Cir. 2003) ............................................... 11

*Andela v. Univ. of Miami*
    692 F. Supp. 2d 1356 (S.D. Fla. 2010) ............................................... 9

*Adelson v. U.S. Legal Support, Inc.*
    09-21527, 2010 U.S. Dist. LEXIS 60335 (S.D. Fla. May 27, 2010) **...............................5, 6, 9**

*Black Diamond Properties, Inc. v. Haines*
    940 So.2d 1176 (5th DCA Fla. 2006) ............................................... 14

*Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*
    532 F. Supp. 2d 1350 (M.D. Fla. 2007) ............................................... 8

*Brown v. SCI Funeral Servs. of Fla., Inc.*
    212 F.R.D. 602 (S.D. Fla. 2003) ............................................... 5

*City of St. Petersburg v. Total Containment, Inc.*
    265 F.R.D. 630 (S.D. Fla. 2010) ............................................... 11

*Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*
    332 Fed. Appx. 565 (11th Cir. 2009) ............................................... 9, 15

*Cooper v. S.Co.*
    390 F.3d 695 (11th Cir. 2004) ............................................... 2

*Davis v. Powertel, Inc.*
    776 So.2d 971 (1st DCA Fla. 2000) ............................................... 8

*Delta Coal Program v. Libman*
    743 F.2d 852 (11th Cir. 1984) ............................................... 7

*Drossin v. Nat'l Action Fin. Servs., Inc.*
    255 F.R.D. 608 (S.D. Fla. 2009). ............................................... 2

*Egwuatu v. South Lubes, Inc.*
    976 So.2d 50 (1st DCA Fla. 2008) ............................................... 6, 8, 13

*Fehely v. LAI Games Sales, Inc.*
    No. 08-23060, 2009 WL 247061 (S.D. Fla. Aug. 11, 2009) ............................................... 8

*Fitzpatrick v. General Mills Inc.*
    263 F.R.D. 687 (S.D. Fla 2010) ............................................... 5, 9, 14, 15

*Florida v. Commerce Commer. Leasing, LLC*
    946 So. 2d 1253 (Fla. 1st DCA 2007) ............................................... 8

PAGE

*Florida v. Wyndham Int'l. Inc.*
   869 So. 2d 592 (Fla. 1st DCA 2004) ......................................................9

*Florida v. Tenet Healthcare Corp.*
   420 F. Supp. 2d 1288, 1310-11 (S.D. Fla. 2005).......................................9

*Gastaldi v. Sunvest Resort Communities, LC*
   No. 08-62076, 2010 U.S. Dist. LEXIS 9876, (S.D. Fla. Feb. 3, 2010) ....................................8

*Harris v. Gen. Dev. Corp.*
   127 F.R.D. 655 (N.D. Ill.1989) ........................................................14

*Hutson v. Rexall Sundown, Inc.*
   837 So.2d 1090 (1st DCA Fla. 2003) ..................................................12

*In re Live Concert Antitrust Litig.*
   247 F.R.D. 98 (C.D. Cal. 2007) ........................................................10

*In re Monumental Life Ins. Co.*
   365 F.3d 408 (5th Cir. 2004) ..........................................................7

*In re Tobacco II Cases*
   46 Cal. 4th 298 (Cal. 2009) ............................................................10

*Kennedy v. Tallant*
   710 F.2d 711 (11th Cir. 1983) ..........................................................8

*Maggio v. Dep't of Labor and Employment Sec.*
   910 So.2d 876 (Fla. 2d DCA 2005) ....................................................3

*Meyer v. Citizens & S. Nat'l Bank*
   106 F.R.D. 356 (M.D. Ga.1985) ........................................................14

*Morris v. ADT Sec. Servs.*
   580 F.Supp.2d 1305 (S.D. Fla. 2008) ................................................5

*N. Am. Clering, Inc. v. Brokerage Computer Sys., Inc.*
   No. 07-1503, 2009 WL 2982834, (M.D. Fla. Sept. 11, 2009).........................8

*O'Neill v. The Home Depot U.S.A., Inc.*
   243 F.R.D. 469 (S.D. Fla. 2006) ......................................................12

*Oshana v. Coca-Cola Co.,*
   472 F.3d 506 (7th Cir. 2006) ..........................................................6

*Parr v. Maesbury Homes, Inc.*
   No. 09-1268 2009 WL 5171770 (M.D. Fla. Dec. 22, 2009) ..........................9

*PBM Prods., LLC v. Mead Johnson & Co.*
   No. 3:09-CV-269 (E.D. Va.) ............................................................10

PAGE

*Philip Morris USA Inc. v. Hines*
    883 So.2d 292 (4th DCA Fla. 2003) ...............................................................12, 14

*Pincus v. Law Offices of Erskine & Fleisher*
    617 F. Supp. 2d 1265 (S.D. Fla. 2009) ......................................................................9

*Pfeil v. Sprint Nextel Corp.*
    284 F. App'x 640 (11th Cir. 2008) ............................................................................9

*POP's Pancakes, Inc. v. NuCO2, Inc.*
    251 F.R.D. 677 (S.D. Fla. 2008) .............................................................................14

*Prohias v. Pfizer, Inc.*
    485 F.Supp.2d 1329 (S.D. Fla. 2007) .....................................................................14

*Romano v. Motorola, Inc.*
    2007 WL 4199781 (S.D. Fla. Nov. 26, 2007) ...........................................................5

*Sher v. Raytheon Co.*
    No. 08-cv-889, 2009 WL 3193152 (M.D. Fla. Sep. 30, 2009) ............................5, 12

*Siemers v. Wells Fargo & Co.*
    N. C 05-04518 WHA, 2006 WL 3041090 (N.D. Cal. Oct. 24, 2006) .....................7

*Smith v. Wm. Wrigley, Jr., Co.*,
    No. 09-60646, 2009 WL 3172771 (S.D. Fla. Oct. 1, 2009) ...................................11

*Stone Creamery, Inc. v. Lenora Foods I, LLC*
    332 F. App'x 565 (11th Cir. 2009) ............................................................................8

*Strzakowlski v. General Motors Corp.*
    No. 04-4740, 2005 WL 2001912 (D.N.J. Aug. 16, 2005) ......................................10

*Wiener v. The Dannon Co., Inc.*
    255 F.R.D. 658 (C.D. Cal. 2009) ...............................................................................6

**Rules**

Fed. R. Civ. P. 23(b)(3) ...........................................................................................2, 8, 15

Fed. R. Civ. P. 23(c)(1)(C) ............................................................................................8

Florida Statutes §501.201 ...............................................................................................1

15 U.S.C. § 1051............................................................................................................10

## I.    INTRODUCTION

This lawsuit is ideally suited for class certification.  It is based on one claim – violation of Florida's Deceptive and Unfair Trade Practices Act, Florida Statutes §501.201, *et seq*. ("FDUTPA").  It is limited to one product – Mead Johnson's Enfamil® LIPIL®.  Mead Johnson argues that this case is about whether Enfamil® LIPIL® is the only infant formula that contains DHA and ARA.  That is not true.  Instead, this case is about Mead Johnson's representations that Enfamil® LIPIL®, and only Enfamil® LIPIL®, contains "LIPIL," Mead Johnson's "exclusive formula" which is a "unique blend of DHA and ARA,"[1] provides infant developmental benefits that no other infant formula can provide, even if those other formulas contain DHA and ARA.  The alleged misleading representations are on every product label and/or lid sold during the Class period.[2] Because of this unique benefit, Mead Johnson can charge more for its Enfamil® LIPIL® than other manufacturers of infant formulas, including those that merely contain DHA and ARA.

Mead Johnson cannot, and indeed makes no attempt to, demonstrate that this lawsuit is better tried on an individual basis, thousands of times over.  Instead, Mead Johnson begins and ends its opposition with quotes from Lincoln and *Marbury v. Madison*, unwarranted attacks on the motives and character of Plaintiff and her counsel[3], and arguments about a class Plaintiff does not seek to certify.

The Class here should be certified because the predominating common issues are (1) whether Mead Johnson's superiority message regarding the exclusive benefits of its Enfamil® LIPIL® is conveyed to consumers; and (2) does Mead Johnson's Enfamil® LIPIL® actually provide developmental benefits to infants that no other infant formula can provide, including those with

---

[1]  *See* Wright Declaration in Support of Class Certification Motion (5/19/10) ("Wright Decl."), Ex. 17 (MJF926-933) ("En-Fact: Enfamil LIPIL®'s unique formulation is not available in any store brand."); Wright Decl., Ex. 23 (Product Label, MJF12) (the product label represents that "This *exclusive formula* is available only from the Enfamil® brand."); *see also* Wright Decl., Ex. 22 (Product Label, MJF21) ("This scientifically-developed formula is not available as a store brand").

[2]   *See* Wright Decl., Exs. 22-23 and Wright Reply Declaration ("Wright Reply Decl."), Ex. A (MJF8) (exemplar Product labels).

[3]  Mead Johnson's misrepresentations of Plaintiff's counsels' character and intentions in prosecuting this litigation are without merit.  In fact, counsel has consistently acted in good faith in both their pre-suit investigation and prosecution of this case. *See* Wright Reply Decl., at ¶¶5-9; Deposition of Allison Nelson (6/10/10), attached as Ex. B to the Wright Reply Decl. ("Nelson Depo.") at 8-13, 35-36.

DHA and ARA.[4]

Further, Plaintiff has met both the typicality and adequacy requirements.  She was one of the thousands of Floridians misled by Mead Johnson's misrepresentations about the exclusive benefits and superiority of its Product.  Ms. Nelson testified that she repeatedly, and as recently as January 2006, purchased the Product after having seen Mead Johnson's advertising and product label touting Enfamil® LIPIL® as a superior infant formula and was damaged as a result. *See* Nelson Depo., at 27-29 (describing advertisements); 32:3-7; 33:2-3 (purchased produced based on advertising claims).  Ms. Nelson brought this lawsuit because she "[j]ust feel[s] that [she is] among many other[s] [who] were wronged in that [they] were given misinformation stating that this was the only product that was going to improve the brain and eye development of the baby." *Id*. at 124:22-25.

Mead Johnson does ***not*** challenge the Rule 23(a) prerequisites of numerosity and commonality, nor the Rule 23(b) prerequisite of superiority.  Plaintiff's motion for certification of a Rule 23(b)(3) damages Class and a Rule (b)(2) injunctive relief Class[5] should be granted.

## II.     PLAINTIFF SATISFIES THE TYPICALITY REQUIREMENT OF RULE 23(a)(3)

Typicality does not require that the named representative have claims identical to those of absent class members.   Rather, the named plaintiff's claims must "share the same essential characteristics as the claims of the class at large." *Cooper v. S.Co.*, 390 F.3d 695, 714 (11th Cir. 2004).  The evidence required to defeat typicality is exacting.   "To defeat typicality, the factual variation of a class representative 'must be clear and must be such that interests of the class are placed in significant jeopardy.'" *Drossin v. Nat'l Action Fin. Servs., Inc.*, 255 F.R.D. 608, 616 (S.D. Fla. 2009).   Mead Johnson makes no such showing.   Each of the purported individual defenses Mead Johnson raises are without merit, and thus do not render Plaintiff atypical.

---

[4]  Mead Johnson's documents – 99% of which were produced after Plaintiff's opening brief – provide the classwide evidence needed to prove the predominate issues. *See* Wright Reply Decl., at ¶10.

[5]  Mead Johnson's 4-line footnote addressing Plaintiff's request for certification of a Rule 23(b)(2) injunctive relief Class is a strong indicator that it does not seriously dispute the validity of such a Class.  Contrary to Mead Johnson's claim, this case is not "primarily for monetary damages."  Injunctive relief is appropriate to ensure that Mead Johnson discontinues – and does not re-introduce – its deceptive advertising. *See* Mtn, at 19-20, incorporated herein by reference.

### A.      Plaintiff's Claims Are Timely

Contrary to Mead Johnson's argument, Plaintiff's claim is not time-barred.  The statute of limitations is 4 years from the date Plaintiff filed her complaint, October 13, 2009.  While Plaintiff cannot state a claim based on her August 2004 purchases, she can state a claim for her purchases between October 2005 and January 2006.  *See* Nelson Depo., at 88-89; 92-93 (purchased Enfamil LIPIL about 50 times).  She testified that, based on Mead Johnson's representations, she believed Enfamil® LIPIL® was the "best" on the market, *i.e.*, the Enfamil® LIPIL® is "the best one for my baby and that that's the one that I should use, so that he'll have better brain and eye development." *Id*. at 90:24-91:5.  She continued to purchase the Product based on its represented superiority - that Enfamil® LIPIL® was "something special."  *Id*. at 158:15-16; *see also* 68, 70 (relied on mailers, advertisements and the can itself); 103-104 (relied on product label which she continued to review after first purchase), 139-141.  Plaintiff also testified that: "If I had known that Enfamil LIPIL was not the only one that had these, this LIPIL or the DHA and ARA that could promote the brain and eye development, then I would have bought a less expensive one." *Id*. at 166:23-167:1; *see also* 97:20-22; 98:17-18.  While Plaintiff knew Enfamil® LIPIL® was not that only infant formula with DHA and ARA, it was not until shortly before she filed her Complaint that she learned Enfamil® LIPIL®'s "exclusive formulation" and "unique blend of DHA and ARA" did not have exclusive developmental benefits over other infant formulas.  *Id*. at 159:18-160:12. Thus, Plaintiff has a timely claim based on each of her Enfamil® LIPIL® purchases from and after October 2005.[6]  *See, e.g., Maggio v. Dep't of Labor and Employment Sec.*, 910 So.2d 876, 879 (Fla. 2d DCA 2005) (holding that discrete acts of discrimination completed within the limitations period were timely even though prior acts of discrimination were time-barred).

### B.      Plaintiff Purchased Enfamil® LIPIL® - The Product At Issue in This Case

The Class Plaintiff seeks to have certified is defined as: "All persons in Florida who, within the applicable statute of limitations, purchased ***Enfamil LIPIL***." (emphasis added).  It is

---

[6]  Contrary to Mead Johnson's representation, Plaintiff did not refer to a class period beginning in June 2005 in her Motion.  *See* Def. Mem. n. 8.  The Motion provides Enfamil® LIPIL® sales numbers from "June 2005 to March 2010" based on information Mead Johnson provided.  *See* Mtn, at 9, 11-12.   To avoid any confusion, Mead Johnson's records indicate it had sales of over ███████ units during the Class period.

undisputed that Plaintiff purchased Enfamil® LIPIL®.  Def's. Mem. at 11 (*citing* Nelson Depo., at 135:4-8).   Thus, she is undeniably a member of the Class.[7]

### C.   Plaintiff Saw the Deceptive Developmental Benefits Representations and Purchased the Higher Priced Enfamil® LIPIL® based on its Supposed Superiority

Plaintiff knew Enfamil® LIPIL® was not the ***only*** formula with DHA and ARA.  What she did not know and what makes her a typical class representative is that Enfamil® LIPIL®, which Mead Johnson represented as containing a "unique blend of DHA and ARA," which it trade-named "LIPIL" to highlight its so-called superior "exclusive formula,"[8] was no better than the cheaper store brand formulas at improving an infant's mental and visual development.[9]  Plaintiff testified that she purchased Enfamil® LIPIL® based on her belief (and Mead Johnson's own marketing plan), that Mead Johnson's LIPIL® was "something special" that other infant formulas did not have and that it was the "best" formula because it had visual and mental developmental benefits that the other formulas did not.   Nelson Depo., at 90:24-91:5, 155:24-25.   She also testified that had she known Enfamil® LIPIL® was not superior to store brands, she would have purchased a less expensive brand of formula. *Id.* at 166:23-167:1.  Plaintiff's testimony that she did not switch formulas after learning Enfamil LIPIL was not the only formula with DHA and ARA is entirely ***consistent*** with her belief, based on Mead Johnson's superiority representations, that Enfamil® had LIPIL® which was "something special" that other infant formulas did not have.  *Id.* at 92:4-6 (Mead Johnson's claims indicated that Enfamil® was the "only one that had LIPIL, which to me is the only one that improves the brain and eye development"); 142-143 (same); 93:24-25 (Nelson continued to use Enfamil "primarily it was just because I thought it was the best one out

---

[7]  In addition to the Enfamil® LIPIL® product, Mead Johnson manufactures 13 other infant formulas that contain "LIPIL" in their product name, which Plaintiff made reference to in her Motion for Class Certification.  Plaintiff has since learned that the deceptive superiority misrepresentations at issue did not consistently appear on these product labels and no longer seeks to include these products in the Class.

[8]  Mead Johnson represented that "Only Enfamil has LIPIL®, our blend of DHA and ARA."

[9]  Wright Reply Decl., Ex. C (MJF23958-95 at 75) (2008 Business Plan states that so-called "███████████ ███"                                                                                                                ███); Wright Reply Decl., Ex. D (MJF155727-810 at 751) (2008 consumer research study found that "███████████████████████████ ████████████████████████████████████████████████████████████████████████████████████████.")

there for him"); 165 (same).

Plaintiff testified that the label superiority representations were a material factor in her decision to purchase Enfamil® LIPIL®. Nelson Depo., at 92:4-6, 155:24-25, 166:23-167:1. She also testified about other factors that played a role in her decision. *Id*. at 93-95. Mead Johnson focuses on these other factors and argues that because Plaintiff's and other Class members' decision to purchase the Product is not based "primarily" upon the superiority and exclusive developmental benefit representations found on the Product label, Plaintiff is not a typical class representative.[10] Mead Johnson applies an incorrect legal standard. "Plaintiff can sustain an action under the [FDUTPA] if a reasonable consumer acting in the same circumstances would ***likely be deceived*** by a company's business practice." *Morris v. ADT Sec. Servs.,* 580 F.Supp.2d 1305, 1309-1310 (S.D. Fla. 2008) (*citing Romano v. Motorola, Inc.*, 2007 WL 4199781, *1 (S.D. Fla. Nov. 26, 2007) (emphasis added). As recognized in *Fitzpatrick v. General Mills Inc.*, 263 F.R.D. 687 (S.D. Fla 2010), the Eleventh Circuit has found that FDUTPA "does not require a plaintiff to prove the misrepresentation caused them to do *anything*; rather, the causation requirement is resolved based on how an objective reasonable person would behave under the circumstances." *Id*. at 695 (emphasis original). That is, under FDUPTA plaintiff "is only required to prove that [defendant's] conduct would deceive an objective reasonable consumer." *Id.* at 697.[11]

---

[10]  Mead Johnson confuses ascertainability with identifying those Class members who will ultimately recover. Whether a class is ascertainable depends on the clarity of the class definition. For certification purposes, "[a] class definition must specify a 'particular group at a particular time and location who were harmed in a particular way' and define the class 'such that a court can ascertain its membership in some objective manner.'" *Sher v. Raytheon Co.*, No. 08-cv-889, 2009 WL 3193152, at *8 (M.D. Fla. Sep. 30, 2009); *Brown v. SCI Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602, 608 (S.D. Fla. 2003) (same). That is, a class is ascertainable if one can determine his or her membership in the class through objective criteria. The requirement is easily satisfied here: the Class includes a discrete group – those who purchased Enfamil LIPIL during the Class period. Membership in the Class is determined by objective criteria. Thus, the proposed Class is sufficiently definite.

[11]  The Honorable Paul C. Huck discussed his *Fitzpatrick* opinion in denying certification in *Adelson v. U.S. Legal Support, Inc.*, Case No. 09-21527, 2010 U.S. Dist. LEXIS 60335, at *48-53 (S.D. Fla. May 27, 2010). In *Adelson*, alleging that court reporting companies deceptively charged for computer-generated word indices, Judge Huck concluded that the FDUTPA requirement that "the act or practice must be one likely to deceive a consumer acting reasonably in the same circumstances" raised predominate individualized issues. *Id.* at *51-53. Although reasonableness is an objective determination, given the facts of *Adelson*, the other requirement – "in the same circumstances" – raised individual issues not suitable for classwide determination. That is, some consumers valued the word indices and others did not. The facts of this action are very similar to *Fitzpatrick* – no reasonable consumer would pay the premium for Enfamil LIPIL based on the developmental benefits message had they known that less expensive infant formulas with DHA and ARA provided the same benefits. *See, e.g., Fitzpatrick*, 263 F.R.D. at 697 (the "most

Plaintiff has submitted the declaration of Dr. Maronick, a marketing and consumer purchase behavior expert, who concludes based on a review of Mead Johnson's own marketing surveys, that the superiority representations found on the Product label were a material factor in the mix of information upon which consumers based their purchase decision.[12]   And, while the label representations may vary in relative importance among consumers, they are nevertheless material to most and the "strongest driver" of consumer behavior among younger mothers and the infant needs and traditional market segments.   *Id*. at pp. 3, 4, 6-7, 11-12.   Dr. Maronick finds that consumers were willing to pay a premium price for Enfamil LIPIL because Enfamil® LIPIL® "promises something extra."

### D.   Mead Johnson's Deceptive Superiority Message is Not Based Solely on Its "Clinically Proven" Misrepresentation

As acknowledged by its own marketing expert, Mead Johnson's deceptive superiority message includes, among other representations: "Enfamil LIPIL is the only brand clinically proven to improve brain and eye development; Enfamil LIPIL has a unique blend of DHA and ARA; and Enfamil LIPIL gives you more than store brands, which may cost less."   Declaration of Joel Steckel ("Steckel Decl."), at ¶6.   Each of these representations convey the same deceptive superiority message - that Enfamil® LIPIL® contained a unique blend of DHA and ARA that provided developmental benefits beyond that other infant formulas could provide.   Thus, is it sufficient for Plaintiff to have based her Enfamil® LIPIL® purchase on any one or a combination of these misrepresentations.

---

obvious reason why consumers would buy Yo-Plus is that it promises something extra"); *Wiener v. The Dannon Co., Inc.*, 255 F.R.D. 658, 670 (C.D. Cal. 2009) ("there is no reason…purchasers would have selected the Products over other Dannon products or similar, generally less expensive products by other brands").

[12]   *Oshana v. Coca-Cola Co*., 472 F.3d 506 (7th Cir. 2006), relied on by Mead Johnson, is not binding authority.  It is a Seventh Circuit opinion concerning a violation of the Illinois Consumer Fraud Act (ICFA) which, unlike the FDUTPA, requires a showing of "actual damage" and "proof that the damage occurred 'as a result of the deceptive act or practice.'"  *Id*. at 515.  *Oshana* involved allegations that defendant violated the ICFA by failing to disclose that fountain and bottled Coca-Cola were not the same product.  472 F.3d at 513-14.  The Seventh Circuit held that in order to prove damages caused by defendant's deception it would be necessary to prove that a class member did not know that the two products were different.  Thus, *Oshana* – unlike this case – required a determination of the subjective beliefs of each purported class member.  *Id*.

Further, assuming *arguendo*, that Mead Johnson is correct and only the "clinically proven" misrepresentation will support a FDUTPA claim, which is not the case, Mead Johnson does not dispute the can of Enfamil® LIPIL® Plaintiff purchased in January 2006 contained the "clinically proven" representation on the label. Nelson Depo., at 87. Further, Plaintiff testified that she first used Enfamil® LIPIL® when she was provided a free sample with an informational flier and coupons that contained the "clinically proven" representation. Nelson Depo., at 59:19-60:22. She also testified that she later purchased the Product based, in part, on the "clinically proven" representation which she recalled being on the can. *Id.* at 59:19-61:1; 93:11-14.

Thus, Plaintiff and the proposed Class assert the same FDUTPA claim which is based on the same superiority misrepresentations.[13] Further, Plaintiff testified that she purchased Enfamil LIPIL based on the superiority representations, exactly as Mead Johnson intended when it spent all that money to improve "customer perception" of the "superior nutritional benefits" of its Product. *See* Mead Johnson's 2009 Initial Public Offering (IPO) Prospectus, SEC Registration No. 3330156298, *available at* http://www.sec.gov/Archives/edgar/data/1452575/000119312509025593/d424b4.htm ("Prospectus"), at 48 (Mead Johnson endeavored to improve "consumer perception" of the "superior nutritional benefits" of its Product); Nelson Depo., at 64:24-65:1 ("Enfamil had the LIPIL, which apparently improves the brain and eye development, and it specifically stated that."). Thus, Plaintiff satisfies the typicality requirement. *See Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983) (typicality satisfied where plaintiff seeks to prove defendant "committed the same unlawful acts in the same method against an entire class…[which means that] all members of this class have identical claims").

## III.   PLAINTIFF SATIFIES THE PREDOMINANCE REQUIREMENT OF RULE 23(b)(3)

Mead Johnson argues that Plaintiff cannot satisfy the predominance requirement of Rule

---

[13]   If the Court finds Plaintiff cannot state a FDUTPA claim, which she can, Plaintiff requests leave to amend her complaint to name a substitute plaintiff. *Delta Coal Program v. Libman*, 743 F.2d 852, n. 6 (11th Cir. 1984) (holding that substitution appropriate where "the operative facts and the cause of action are not changed, but only the formally named plaintiff" explaining that "Rule 17(a) was intended to extend to precisely this kind of situation, to ensure that the suit is prosecuted by the one possessing the right sought to be enforced") (citations omitted); *see also Siemers v. Wells Fargo & Co.*, N. C 05-04518 WHA, 2006 WL 3041090, at *7 (N.D. Cal. Oct. 24, 2006) (granting plaintiff leave to amend to cure lack of standing "by the addition of another named plaintiff").

23(b)(3) "because under FDUPTA, every class member must prove causation and damages, and the individual nature of such determinations precludes class treatment. Def's. Mem. at 14. Despite Mead Johnson's suggestion, common issues of causation and the entitlement to damages predominate and strongly support treatment of this case as a class action.

###### A.     Causation Issues May Be Resolved on a Classwide Basis

The seminal Florida decision on whether proof of individual reliance is required under FDUPTA is *Davis v. Powertel, Inc.*, 776 So.2d 971 (Fla. 1st DCA 2000), where the court addressed a classwide FDUPTA claim and held: "Because proof of reliance is unnecessary, the plaintiffs' inability to show reliance in every case cannot be used to justify a finding that individual issues will predominate over the class claims." *Id.* at 975.

Since *Powertel*, a legion of other Florida and federal district courts have similarly held that actual reliance is not required under FDUPTA. *See e.g., Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567 (11th Cir. 2009) ("FDUPTA does not require a plaintiff to prove actual reliance on the alleged conduct."); *Fitzpatrick*, 263 F.R.D. at 695 (same); *Gastaldi v. Sunvest Resort Communities, LC*, No. 08-62076, 2010 U.S. Dist. LEXIS 9876, at *55 n.14 (S.D. Fla. Feb. 3, 2010) ("Of course, actions under the FDUPTA and for common-law fraud are not the same, in part because a showing of reliance is not required to prevail under the FDUPTA.") and at *60 n.15 ("To be clear, actual reliance is not an element under the FDUPTA."); *N. Am. Clering, Inc. v. Brokerage Computer Sys., Inc.*, No. 07-1503, 2009 WL 2982834, at *8 (M.D. Fla. Sept. 11, 2009) ("A deceptive trade practice constitutes a somewhat unique tortuous act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."); *Fehely v. LAI Games Sales, Inc.*, No. 08-23060, 2009 WL 247061, at *5 (S.D. Fla. Aug. 11, 2009) (same); *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F. Supp. 2d 1350, 1364 (M.D. Fla. 2007) (same); *Florida v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310-11 (S.D. Fla. 2005) (same); *Egwuatu v. S. Lubes, Inc.*, 976 So. 2d 50, 53 (Fla. 1st DCA 2008) ("Because the plaintiffs need not prove reliance to establish a claim under the statute, the differences that might exist on this point do not foreclose the possibility of class litigation, as they would in a claim of fraud.");

*Florida v. Commerce Commer. Leasing, LLC*, 946 So. 2d 1253, 1258 (Fla. 1st DCA 2007) (actual reliance not required); *Florida v. Wyndham Int'l., Inc.*, 869 So. 2d 592, 598 (Fla. 1st DCA 2004) (same). Indeed, the Eleventh Circuit also previously held that FDUPTA requires taking into account whether "the practice was likely to deceive a consumer acting reasonably in the same circumstances." *Pfeil v. Sprint Nextel Corp.*, 284 F. App'x 640, 643 (11th Cir. 2008); *accord Riley v. Merrill Lynch*, 292 F.3d 1334, 1346 n.16 (11th Cir. 2002) (citing *Powertel* that "DUPTA liability is objective; question is whether the practice complained of was likely to deceive a consumer acting reasonably in the same circumstances."); *Parr v. Maesbury Homes, Inc.*, No. 09-1268, 2009 WL 5171770, at *7 n.11 (M.D. Fla. Dec. 22, 2009) (same); *Adelson*, 2010 U.S. Dist. LEXIS at *51-53 (same).[14]

Further, classwide evidence confirms that Mead Johnson's representations are misleading and would deceive an objective reasonable consumer.[15] Indeed, during the course of the trial in the PBM Action, PBM submitted two consumer surveys that establish the deceptiveness of the representations.[16] The first survey was designed to determine what messages were being received by consumers from the mailer attached to the Complaint in this action as Exhibit D and which

---

[14] Thus, Plaintiff need not delve into idiosyncratic beliefs or anomalous experiences of absent Class members. *See, e.g., In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 141 (C.D. Cal. 2007) ("to the extent that Defendants might ultimately demonstrate on the merits that some class members were not harmed…does not preclude class certification"). Furthermore, causation in the context of state consumer protection claims can be presumed when the misrepresentations or omissions at issue are material. *See Strzakowlski v. General Motors Corp.*, No. 04-4740, 2005 WL 2001912, at *9 (D.N.J. Aug. 16, 2005) (if plaintiff can establish unlawful conduct in the form of material misrepresentations or omissions, she would be entitled to a presumption of causation as to the proposed class); *In re Tobacco II Cases*, 46 Cal. 4th 298, 326-27 (Cal. 2009) ("a presumption or at least an inference, or reliance arises whenever there is a showing that a misrepresentation was material").

[15] In *PBM Products, LLC v. Mead Johnson & Company*, No. 3:09-CV-269 (E.D. Va.) (the "PBM Action"), PBM Products, LLC ("PBM"), a competitor of Mead Johnson and manufacturer of store-brand infant formula also containing DHA and ARA, sued Mead Johnson in the Eastern District of Virginia to challenge the same representations at issue in this case, among others, under the Lanham Act, 15 U.S.C. § 1051, *et seq.* On November 10, 2009, the jury empanelled in that case found that Mead Johnson had engaged in false advertising in violation of the Lanham Act, and awarded PBM $13,500,000. The court confirmed the verdict, found the claims "misleading" and enjoined them. Ex. 8 (PBM Order dated March 12, 2010), at 7-9.

[16] Mead Johnson is collaterally estopped from re-litigating whether or not these statements are misleading in this action. Collateral estoppel bars relitigation of identical issues that were resolved in a prior proceeding, even if the later suit involves a different cause of action. *Andela v. Univ. of Miami*, 692 F. Supp. 2d 1356, 1371 (S.D. Fla. 2010). Collateral estoppel applies even though Mead Johnson has appealed the judgment in the PBM action as the pendency of an appeal in prior litigation does not prevent application of collateral estoppel. *Pincus v. Law Offices of Erskine & Fleisher*, 617 F. Supp. 2d 1265, 1269 (S.D. Fla. 2009) ("the pending appeal of the county court order…does not limit the preclusive effect of the county court's decision").

contained statements substantially similar to the statements set forth on the Enfamil packaging and labeling, including the statement that "only Enfamil LIPIL is clinically proven to improve brain and eye development."  That survey indicated that the mailer was conveying the false message that Enfamil® LIPIL® contained ingredients that are not found in store brands and that clinical tests were done comparing Enfamil® LIPIL® to store brands to show that Enfamil® LIPIL® provides better visual acuity – the very same deceptive messages challenged in this action.  *See* Wright Reply Decl., Ex. E ("Enfamil LIPIL Advertising Mailer Communication Test" and supporting Ridgway Declaration).  A second survey designed to determine the mailer's impact on consumers' purchase intent indicated that the statements in the mailer had a negative impact on a consumer's likelihood to consider purchasing store brand formula.   *See* Wright Reply Decl., Ex. F ("Expert Report – Infant Formula Purchase Impact Study" and supporting Shoen Declaration).  The results of this survey are not surprising.  As set forth in the Dr. Maronick's declaration, Mead Johnson's own internal marketing research for Enfamil demonstrates that information provided by infant formula manufacturers to consumers on packaging and labeling and in other promotional materials is a "strong driver" of consumer purchasing behavior.  Maronick Decl. at pp. 3, 4, 6-7, 11-12.

Plaintiff's experience purchasing Enfamil® LIPIL® is consistent with the findings of these two surveys. Plaintiff first used Enfamil® LIPIL®  when she received a free sample that claimed in accompanying promotional materials, including an informational flier and coupons, that Enfamil® LIPIL® had developmental benefits that other infant formulas did not.  Nelson Depo., at 59:19-60:22.  When she later purchased Enfamil® LIPIL® she did so based on the Product labeling that represented that it had LIPIL® and was clinically proven to improve brain and eye development in infants, which differentiated it from other brands.  *Id.* at 59:19-61:1; 93:11-14 ("Q. In all those 50 times you were buying [Enfamil] because of that clinically proven claim that was on the can? A. Yes.").

Further, the fact that consumers pay a premium price for Enfamil® is itself class-wide evidence that Class members purchased Enfamil® because of its purportedly "unique" ability to promote mental and visual development in infants.  *See, e.g.,* Def's. Mem. at 17 (acknowledging Enfamil® is a "more expensive infant formula"); Steckel Decl., at ¶47 ("████████████████████

10

██████████████████████████ "); Maronick Decl. at pp. 6, 10; ; Wright Reply Decl., Ex. I (MJF00055719-39 at 26) (" ████████████████████████████████████████████████████████ "). As Mead Johnson told prospective advertisers, DHA and ARA advertising is "███████████████" among competitors, so LIPIL marketing must ███████████████████████████████████" because "███████ ████████████████████████" Wright Reply Decl., Ex. J (MJF0059271-77 at 74).[17]  For all these reasons, causation issues predominate and lend themselves to classwide resolution.

### B.    Damages May Be Determined On an Aggregate Classwide Basis

Mead Johnson relegates to a footnote its argument that individual damages issues defeat the predominance of common questions.  Def's Mem. at 17-18 n. 13.  This is not surprising, however, as the rule of the Eleventh Circuit is that "the presence of individualized damages issues does not prevent a finding that the common issues in [a] case predominate." *Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003); *see also Sher,* 2009 WL 3193152 (individualized damages issues due to variation in water contamination levels does not defeat class certification).[18] The only authority Mead Johnson cites for its argument, *City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630 (S.D. Fla. 2010), involved personal injury claims and is thus inapposite.

### C.    Existing Case Law Supports A Predominance Finding

Mead Johnson relies heavily on three decisions denying motions for class certification in

---

[17] Mead Johnson's own documents state that "██████████████████████████████████" and "█████████████████████████" Wright Reply Decl., Ex. G (MJF613101-09 at 03).  Mead Johnson discussed "████████████████████████" Wright Reply Decl., Ex. H (MJF100068-99 at 79).

[18] Moreover, under FDUPTA, damages may be a function of the "market value" of Enfamil – an objective class-wide figure to be determined by expert testimony at trial.  *See Smith v. Wm. Wrigley, Jr., Co.*, No. 09-60646, 2009 WL 3172771, at *3 (S.D. Fla. Oct. 1, 2009) ("[a]s a general rule, the measure of actual damages under [FDUTPA] is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered").

arguing that common issues do not predominate in the instant action.  *See* Def's. Mem. at 15-16 (citing *Philip Morris USA Inc. v. Hines*, 883 So.2d 292 (4th DCA Fla. 2003); *O'Neill v. The Home Depot U.S.A., Inc.*, 243 F.R.D. 469 (S.D. Fla. 2006); and *Hutson v. Rexall Sundown, Inc.*, 837 So.2d 1090 (1st DCA Fla. 2003)).  Mead Johnson's reliance on these authorities is wholly misplaced.  There, unlike here, class members received a product that conformed to the representations on the label necessitating individualized inquiries to determine whether a particular consumer was a part of the class.

More specifically, in *Rexall Sundown*, the plaintiffs alleged that Rexall's advertising and labeling of the calcium supplement "Calcium 900" was deceptive because it misrepresented the number of milligrams in each softgel.  However, the instructions on the label stated "SUGGESTED ADULT USAGE:  As a dietary supplement, take three (3) softgels daily.  SUGGESTED ADULT USAGE PROVIDES:  900 mg. of Liquid Calcium." *Rexall Sundown*, 837 So.2d at 1091 n.2.  Based on these label disclosures, the court found that "because the proposed class includes consumers who had actual knowledge of the amount of calcium contained in each softgel,… individual factual issues would predominate." *Id.* at 1093.  In this case, by contrast, there was no disclosure on the Enfamil® LIPIL® label accompanying Mead Johnson's claim that "Only Enfamil has LIPIL, a unique blend of DHA and ARA," that Enfamil® LIPIL® was not superior to other infant formulas and was not the only infant formula with DHA and ARA.  Nor was there any disclosure that Enfamil® LIPIL® was not the only infant formula that was clinically proven to improve mental and visual development in infants.  As such, *Rexall* has no bearing on the instant case.

Similarly, in *Home Depot*, the plaintiff alleged that Home Depot had engaged in a deceptive practice by adding a ten percent "damage waiver" charge to tool and equipment rental contracts without disclosing that the damage waiver was optional.  *Home Depot*, 243 F.R.D. at 471.  However, as the plaintiff conceded, Home Depot had a written policy requiring disclosure that the damage waiver was optional.  *Id.* at 480.  Therefore, "[b]y Plaintiff's own definition, the proposed class would include many customers who, in contrast to Plaintiff, knew the damage waiver was optional, as well as understood the scope of coverage (because, for example, they read

the rental agreement or were informed by a Home Depot employee or because they reviewed information at a Home Depot store) and chose to purchase the waiver." *Id.* at 477. As such, individual inquiries were required to determine whether or not each class member was aware of whether the damage waiver was optional. *Id.* at 480.[19] Here, by contrast, Mead Johnson made no disclosure that its Enfamil® LIPIL® product provided no "superior nutritional benefits" but, instead, spent enormous sums to improve "consumer perception" of the superior nutritional benefits" of its Product. *See* Prospectus, at 48.

In *Philip Morris*, plaintiffs alleged that Phillip Morris misrepresented the purported health benefits of its co-called "light" cigarettes, the Court found that whether class members received the benefits advertised - namely, lower tar and nicotine - depended on their smoking habits and, therefore, some smokers received the represented benefits. *Phillip Morris*, 883 So. 2d at 294. Here, no purchaser of Enfamil® LIPIL® received the represented superior infant nutritional benefits.[20]

In contrast to the inapposite case law upon which Mead Johnson relies, *Fitzpatrick* is factually analogous to this case and supports class certification. Mead Johnson fails to distinguish

---

[19] The plaintiff's case in *Home Depot* was also largely dependent on oral, as opposed to written, representations. As the court observed:

> While Plaintiff concedes that Home Depot Standard Operating Procedures require the disclosure that the damage waiver is optional, Plaintiff maintains that this is not the case in practice. (See id.). Thus, Plaintiff's claim is not based on Home Depot's policy about the damage waiver. But rather rests on alleged violations by Home Depot employees of the written policy..... This is a highly individualized claim that would require numerous individual verbal accounts as to what occurred and the conversations that took place with Home Depot employees on the day(s) equipment was rented.

*Id.*

[20] Defendants' other authorities are similarly inapposite as they involved oral representations or disclosures of the true facts to at least some class members. *Cf. Egwuatu v. South Lubes, Inc.*, 976 So.2d 50 (1st DCA Fla. 2008) (individual inquiries made class litigation impractical in case alleging violation of FDUPTA based on service stations' collection of an "environmental fee" and omission of the fact that that fee was not a tax even though the fact that the fee was not a tax was routinely disclosed in writing and orally to customers); *Black Diamond Properties, Inc. v. Haines*, 940 So.2d 1176, 1178-79 (5th DCA Fla. 2006) ("At the very core of plaintiffs' complaint is the allegation that oral and written misrepresentations took place in 500 separate oral transactions spanning many years and involving numerous sales personnel. To prove these allegations, it will be necessary that each plaintiff testify."); *POP's Pancakes, Inc. v. NuCO2, Inc.*, 251 F.R.D. 677, 687 (S.D. Fla. 2008) (in case brought by restaurants against lessor of beverage equipment alleging violation of FDUPTA based on failure to disclose processing fee included in property tax invoices, individual inquiries required regarding oral representations and disclosures made in the course of commercial transactions defeated predominance of common questions); *Prohias v. Pfizer, Inc.*, 485 F.Supp.2d 1329, 1336 (S.D. Fla. 2007) (dismissing class action where plaintiffs continued to purchase cholesterol-reducing drug even after they learned that it was lacking advertised cardiovascular benefits).

*Fitzpatrick.* *See* Def's. Mem. at 18-19. Mead Johnson attempts to distinguish *Fitzpatrick* on the basis that Plaintiff's claims here are not regarding a lack of efficacy, and therefore "the Court cannot simply conclude that the product claimed a benefit that was lacking, priced itself based thereon, and return the purported price increase to the class." *Id.* at 19.[21] Not true. Plaintiff alleges that Mead Johnson deceptively represented that Enfamil was the only infant formula that contained LIPIL, a "unique blend" of DHA and ARA and the only infant formula that was clinically proven to improve mental and visual development in infants, that Mead Johnson charged a premium price for these benefits, and that these benefits were lacking. Proof of this benefits will be done on a classwide basis, and is no different from the class's efficacy claim in *Fitzpatrick*.

Mead Johnson also attempts to distinguish *Fitzpatrick* by suggesting that this case is different because "the language alleged to be misleading did not appear on the product's packaging throughout the class period and did not appear on every form or version of the product – only on the powder variety of one specific formula, Enfamil® LIPIL®." Def's. Mem. at 19. As noted above, Plaintiff seeks to represent only purchasers of the powder variety of Enfamil LIPIL, which Mead Johnson concedes bore the representations at issue during the Class period.[22] As also noted above, during the early part of the Class period, when the "clinically proven" statements at issue had not yet appeared on the Enfamil® LIPIL® label, they appeared prominently in Mead Johnson's other marketing and continued to so appear throughout the Class period. Mead Johnson's use of

---

[21] Contrary to Mead Johnson's argument, the court in *Fitzpatrick* did not determine that the alleged deceptive message at issue was "demonstrably false" or that the purported health benefit "was undisputedly lacking." Def's. Mem. at 18. Rather, as with the alleged deceptive Enfamil® LIPIL® representation here, the *Fitzpatrick* decision stated that "[w]hether General Mills' claim….is 'deceptive' is a mixed question of law and fact common to every class member seeking damages under the FDUPTA." *Fitzpatrick*, 263 F.R.D. at 696.

[22] Importantly, Plaintiff's claim is not based solely on the "clinically proven" misrepresentation. However, even if it were, at most, Mead Johnson's argument would warrant narrowing the Class period to when the "clinically proven" representations appeared on the Enfamil LIPIL labeling. *See also Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir.1993) ("A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly"); *Harris v. Gen. Dev. Corp.*, 127 F.R.D. 655, 659 (N.D.Ill.1989) ("[I]t is certainly within this court's discretion to limit or redefine the scope of the class"); *Meyer v. Citizens & S. Nat'l Bank*, 106 F.R.D. 356, 360 (M.D.Ga.1985) ("The Court has discretion in ruling on a motion to certify a class. This discretion extends to defining the scope of the class.") (citations omitted). The Federal Rules also contemplate such modifications. *See* Fed.R.Civ.P. 23(c)(1)(C) (class "may be altered or amended before the final judgment").

different mediums to communicate its deceptive message does not defeat the predominance of common questions. Indeed, as the *Fitzpatrick* decision recognized, every member of the Class need not have been exposed to every representation made by Mead Johnson to make class treatment appropriate. Instead, where a defendant, like Mead Johnson in this case, has "employed a number of devices, jingles and turns of phrase to convey the common message" (*id.* at 693-94) and communicated a "consistent and prominent theme among all the various mediums employed," "variations" in the different statements do not prevent the fact finder from evaluating whether the representations are deceptive on a class-wide basis. *Id.* at 700.[23]

## IV.   CONCLUSION

Based on the foregoing, this Court should certify a Rule 23(b)(3) damages Class and a Rule 23(b)(2) Class to pursue injunctive relief. This Court should also appoint Allison Nelson as the Class representative and undersigned counsel as Class Counsel.

DATED: August 13, 2010

s/William C. Wright
Florida Bar No. 138861
Theodore J. Leopold
**LEOPOLD KUVIN, P.A.**
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Tel:  (561) 935-4801
Fax: (561) 515-1401
Email:  wwright@leopoldkuvin.com
Email:  tleopold@leopoldkuvin.com

Elaine A. Ryan, Esq.
Patricia N. Syverson, Esq.
**BONNETT, FAIRBOURN,
  FRIEDMAN & BALINT, P.C.**
2901 N. Central Ave., Suite1000
Phoenix, AZ 85012
Tel:  (602) 274-1100
Fax: (602) 798-5860
Email: eryan@bffb.com
Email: psyverson@bffb.com

Timothy G. Blood
Thomas J. O'Reardon II

---

[23] Mead Johnson argues that the District Court in *Fitzpatrick* erroneously relied on *Cold Stone*, an unpublished decision, as binding authority.  Def.'s Mem. at 19.  The District Court in *Fitzpatrick* found persuasive the Eleventh Circuit's "interpretation of *Florida law* that is binding on this Court."  *Fitzpatrick*, 263 F.R.D. at 695.

**BLOOD HURST & O'REARDON, LLP**
600 B Street, Suite 1550
San Diego, CA  92101
Telephone:  (619) 338-1100
Facsimile:  (619) 338-1101
Email:  tblood@bholaw.com
Email:  toreardon@bholaw.com

Patrick J. Sheehan
**WHATLEY DRAKE & KALLAS, LLC**
60 State Street, 7th Floor
Boston, MA 02109
Tel:  (617) 573-5118
Fax:  (617) 573-5090
Email:  psheehan@wdklaw.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 13th day of August, 2010 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically.


                         s/William C. Wright