UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN RE: ENFAMIL LIPIL MARKETING AND SALES PRACTICES LITIGATION, MDL No. 2222 | Case No. 0:11-MD-02222-JIC <br><br> <u>CLASS ACTION</u> |
| THIS DOCUMENT RELATES TO: <br><br> *Nelson v. Mead Johnson Nutrition Company, et al.*, No. 09-61625-CIV-COHN/SELTZER | <u>AMENDED CLASS ACTION COMPLAINT</u> <br><br> <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Allison Nelson, by and through her attorneys, brings this action on behalf of herself and all others similarly situated against Defendant Mead Johnson & Company, LLC ("Mead Johnson" or "Defendant"). Plaintiff hereby alleges, on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

## NATURE OF THE ACTION

1. Defendant produces, markets, and sells Enfamil® brand infant formula, which contains LIPIL® (the "Product" or "Enfamil LIPIL").

2. LIPIL is Defendant's name for a blend of two nutrients found in breast milk, docosahexaenoic acid ("DHA") and arachidonic acid ("ARA"). Defendant claims that these nutrients promote brain and eye development in infants.

3. Defendant, whose Product enjoys significant brand recognition and sells at a hefty premium, faces tough competition from lower-priced store brands and private label product.

4. Unable to meet this competition with improved quality, and unwilling to lower its prices, Defendant has sought to increase sales by falsely representing to consumers that Enfamil LIPIL is the only baby formula that contains DHA and ARA.

5. This claim is false. In fact, other brands of baby formula, including lower-priced store brands and private labels, contain DHA and ARA in amounts equal to or greater than those contained in Defendant's Product.

6. Because of Defendant's false representations regarding the nature of its Product, Plaintiff and Class members paid more for Defendant's Product than they otherwise would have, mistakenly believing that they were purchasing the only infant formula that provides certain nutrients essential to the brain and eye development of their babies. Florida consumer protection laws and similar laws of other states prohibit this conduct.

## JURISDICTION AND VENUE

7. Original jurisdiction in this Court is proper pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of

$5,000,000, and this is a class action in which members of the Plaintiff Class are citizens of a state different from Defendant.

8. Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to the alleged claims occurred in this district and because Defendant:

(a) is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution, and sale of its Product in this district;

(b) does substantial business in this district; and

(c) is subject to personal jurisdiction in this district.

## PARTIES

9. Plaintiff Allison Nelson resides in Weston, Florida. During the Class period, Plaintiff purchased the Product for her infant, suffered injury in fact, and lost money and property as a result of the unfair competition and unlawful, unfair and fraudulent business practices described herein.

10. Defendant Mead Johnson & Company, LLC is a Delaware corporation with its principal place of business in Evansville, Indiana. Mead Johnson & Company, LLC, markets and sells the Product to consumers throughout the United States, including tens of thousands of consumers in Florida.

## DEFENDANT'S UNLAWFUL CONDUCT

11. Defendant's Enfamil LIPIL label is a leading brand of infant formula, with approximately $2.8 billion in sales in 2008.

12. LIPIL is nothing more than Defendant's name for a blend of DHA and ARA, two fats that are naturally found in breast milk, and which Defendant claims are essential to brain and eye development in infants.

13. Recently, Defendant has seen significant competition from lower priced brands, especially store brands and private labels. This is evidenced by these statements in Mead Johnson Nutrition Company's 2009 Initial Public Offering (IPO) Prospectus, SEC Registration

No. 333-156298, available at http://www.sec.gov/Archives/edgar/data/1452575/000119312509025593/d424b4.htm:

- "In periods of economic uncertainty, consumers tend to shift their purchases from our higher-priced premium product to lower-priced product, including private label and store brand product. We believe private label and store brand product manufacturers have continued to gain market share in the United States over the past 12 months." (Prospectus at 16.)

- "[W]e face significant competition from domestic producers and private label, store and economy brand manufacturers." (*Id.* at 48.)

14. Defendant sought to "sustain the strength of [its] brands" by improving "consumer perception" of the "superior nutritional benefits" of its Product. (*Id.*)

15. However, rather than actually improve those nutritional benefits and offer consumers increased value for its increased price, Defendant instead chose to engage in a smear campaign against its competitors, and to mislead consumers into believing that its Product contains a unique blend of essential nutrients, when in fact it contains the same nutrients in the same quantities as other, less expensive brands.

16. Defendant falsely asserts – on its website, product labels, magazine inserts, direct mailers, and other forms of advertising – that that its Product is the only infant formula available that contains DHA and ARA.

17. Defendant's Product label claims that Enfamil LIPIL is the "Only Brand CLINICALLY PROVEN To Improve VISUAL AND MENTAL DEVELOPMENT" in infants. (Ex. A, attached.)

18. A print advertisement circulated by Defendant, attached as Exhibit B, contains these statements:

- "Only Enfamil has LIPIL, our blend of DHA and ARA, important nutrients found in breast milk."

- "[I]t's the only formula shown in published independent clinical studies to [i]mprove brain development [and] [i]mprove eye development."

19. Another print advertisement, attached as Exhibit C, states: "[C]hoose Enfamil LIPIL – the only infant formula that's clinically proven to improve vision." That same advertisement contains an image labeled "Visual acuity at 12 months." The image is divided into two parts. One part is blurry, and is labeled "20/41 Vision – Without LIPIL." The other part is clear, and is labeled "20/28 Vision – With LIPIL."

20. In addition, on Defendant's website dedicated to the Product, www.enfamil.com, there is a Product FAQ link that contains these statements:

Q: What are fatty acids? Why are they important for my baby's development?

A: ... Only Enfamil has LIPIL, our blend of DHA and ARA, important nutrients that promote brain and eye development.

Q: What are DHA and ARA?

A: ... Only Enfamil has LIPIL, our blend of DHA and ARA, important nutrients also found in breast milk that promote brain and eye development.

Q: How does my baby get DHA and ARA?

A: ... After birth, DHA and ARA are found in breast milk and in Enfamil formulas. Only Enfamil has LIPIL, a blend of DHA and ARA, important nutrients that support brain and eye development.

21. In these advertisements, Defendant suggests that because its Product is the only baby formula that contains LIPIL—which is nothing more than DHA and ARA—infants cannot get DHA and ARA from any other baby formula.

22. Defendant further discouraged consumers from purchasing less expensive brands by discrediting lower-priced brands. A direct mailer sent to consumers, attached as Exhibit D, contains these false statements:

- "En-Fact: Enfamil LIPIL's unique formulation is not available in any store brand."

- "It may be tempting to try a less expensive store brand, but only Enfamil LIPIL is clinically proven to improve brain and eye development."

- "Store brands may cost less, but Enfamil gives your baby more."

23. These representations are false. Enfamil LIPIL is not the only brand of infant formula that contains DHA and ARA. Numerous other brands, including the store brands disparaged by Defendant, contain the same quantities of DHA and ARA as Enfamil LIPIL. Despite Defendant's assertions and implications to the contrary, Enfamil LIPIL provides no advantage with respect to infant brain and eye development over other formulas containing DHA and ARA.

24. Defendant has already been subject to three adverse decisions by the National Advertising Division of the Council of Better Business Bureaus ("NAD") for the very advertising claims at issue here. *See* NAD Compliance Report, Case No. 4822CIII, Feb. 12, 2009, attached as Exhibit E.

25. In June 2008 and again in November 2008, Abbott Nutrition, producer of a competing brand of infant formula, brought complaints against Defendant for, *inter alia*, its false claim that "Enfamil LIPIL is the only infant formula shown in independent clinical studies to improve baby's brain and eye development," and other related claims. (Ex. E. at 1.) Following its investigation into both complaints, the NAD recommended that Defendant discontinue its claims. (*Id.*)

26. Defendant refused to comply with these two recommendations, prompting Abbott to bring a third complaint in February 2009. A clearly exasperated NAD stated that it "is incredulous that after two compliance proceedings, with the second compliance proceeding making clear that *any* noncompliant advertising would result in a referral to the appropriate government agency, that the advertiser would disseminate advertising that clearly does not comply with NAD's decision." (*Id.* at 2.) The NAD referred to Defendant's claim that "Only Enfamil LIPIL has been shown in published independent studies to improve BRAIN and EYE

development," and tersely concluded: "This advertisement does not comply with NAD's decision, and NAD need look no further to determine noncompliance." (*Id.*)

27. These NAD complaints are not the only action that has been taken against Defendant for its false advertising. In 2000, competitor PBM Product, LLC, filed suit against Defendant for representing that store brand formulas did not contain the recommended dietary intakes of calcium and folic acid. In 2002, PBM again filed suit against Defendant for creating the false impression that store brands of formula do not contain the beneficial nucleotides that are in Enfamil. In both of these cases, the court entered a temporary restraining order against Defendant, directing it to cease its misleading advertising campaign. In both cases, Defendant settled with PBM.

28. Thus, despite repeated industry self-regulatory and legal action taken against it, Defendant continues to make false representations regarding the benefits of its Product. Despite being ordered to desist three times by the Council of Better Business Bureaus, Defendant continued to represent to consumers that its Product is the only infant formula that contains DHA and ARA.

29. Defendant's false representations led consumers, including Plaintiff, to believe that Defendant's Product contained superior ingredients, not contained in less expensive brands, causing them to pay more for Defendant's Product than they would have had they known that in fact the Product is not the exclusive source of these ingredients.

## PLAINTIFF'S ALLEGATIONS

30. Plaintiff purchased Enfamil LIPIL for her infant during the relevant time period.

31. Plaintiff read the representations on the Product container and had viewed Defendant's advertisements. Plaintiff purchased the Product, and paid a premium price for it, because she believed LIPIL was a unique blend of DHA and ARA that was found only in Defendant's Product.

00027147                                          6

32. Plaintiff purchased the Product at a premium price and gave it to her infant, unaware that other, less expensive brands of infant formula contain the same quantities of DHA and ARA as those found in Defendant's Product.

33. In or around September 2009, Plaintiff learned that Defendant's Product is not the only brand of infant formula that contains equivalent quantities of DHA and ARA.

34. Plaintiff has suffered injury in fact and lost money and property as a result of Defendant's wrongful conduct, in that she paid more for the Product than she would have had she known that the same essential nutrients were available in the same quantities in other less expensive brands of formula. She has suffered damages in the amount she paid for the Product over and above what she would have paid had she known that the Product was not in fact unique in the amount of the DHA and ARA it contained.

35. Plaintiff reasonably relied on Defendant's representations in making her purchasing decisions. Plaintiff's reliance was justified given Defendant's reputation as reliable company.

36. Had Plaintiff known the Product was not the only infant formula available that contains the same quantities of DHA and ARA, she would not have paid as much as she did pay for the Product and would have bought one of the less expensive brands available on the market.

## CLASS ALLEGATIONS

37. Plaintiff brings this action on behalf of herself and all similarly situated consumers pursuant to Federal Rules of Civil Procedure 23(a) and 23(b). The Class of persons whom Plaintiff seeks to represent is defined as:

> All purchasers of Enfamil LIPIL infant formula in the United States between October 13, 2005, through and including March 31, 2010 (the "Class" or "Class members").

> Excluded from the Class are those who received Enfamil LIPIL through the United States Department of Agriculture's Women, Infants, and Children's program ("WIC") and those who purchased for the purpose of resale.

38. Plaintiff and the members of the Class are so numerous that joinder of all members individually, in one action or otherwise, is impracticable.

39. There are questions of law and fact common to the Class.

40. Plaintiff's claims are typical of the claims of the members of the Class. The named Plaintiff is a member of the Class of victims described herein.

41. The named Plaintiff is willing and prepared to serve the Court and the proposed Class in a representative capacity with all of the obligations and duties material thereto. Plaintiff will fairly and adequately protect the interests of the Class and has no interests adverse to or which directly and irrevocably conflict with the interests of other members of the Class.

42. The self interests of the named Class representative are co-extensive with, and not antagonistic to, those of the absent Class members. The proposed representative will undertake to represent and protect the interests of the absent Class members.

43. The named Plaintiff has engaged the services of counsel indicated below. Counsel are experienced in complex class action litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise will represent the named Class representative and absent Class members.

44. This action is appropriate as a class action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

45. This action involves questions of law and fact common to Plaintiff and all members of the Class. These common questions predominate over any issues affecting individual members of the Class and include:

(a) whether Defendant engaged in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of its labeling and advertising practices business;

(b) whether Defendant materially misrepresented that its Product is the only infant formula available that contains DHA and ARA;

(c) whether Defendant knew that its Product was not the only infant formula that contained these nutrients;

(d) whether Plaintiff and Class members are entitled to injunctive relief enjoining Defendant from continuing to advertise its Product as being the only infant formula available that contains DHA and ARA;

(e) whether Defendant should be made to engage in a corrective advertising campaign advising consumers that other, less expensive product are available that contain the same quantities of DHA and ARA as those contained in Defendant's Product; and

(f) whether Plaintiff and Class Members have been harmed and the proper measure of relief.

46. Judicial determination of the common legal and factual issues essential to this case would be far more efficient and economical as a class action than in piecemeal individual determinations.

47. There is no plain, speedy or adequate remedy other than by maintenance of this lawsuit as a class action because individual damages are relatively small, making it economically infeasible for Class members to pursue remedies individually. The prosecution of separate actions by individual members of the Class, even if theoretically possible, would create a risk of inconsistent or varying adjudications with respect to individual Class members against Defendant and would establish incompatible standards of conduct for Defendant.

48. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

(a) given the complexity of issues involved in this action and the expense of litigating the claims, few, if any, Class members could afford to seek legal redress individually for the wrongs that Defendant committed against them, and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

(b) when Defendant's liability has been adjudicated, claims of all Class members can be determined by the Court;

(c) this action will cause an orderly and expeditious administration of the Class claims and foster economies of time, effort and expense, and ensure uniformity of decisions; and

(d) without a class action, many Class members would continue to suffer injury, and Defendant's violations of law will continue without redress while Defendant continues to reap and retain the substantial proceeds of its wrongful conduct.

49. Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

50. Defendant has acted on grounds applicable to the Class generally; therefore, Plaintiff seeks equitable and injunctive relief on behalf of the entire Class on grounds generally applicable to the entire Class.

## COUNT I

### For Violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. 501.201 *et seq.* and Similar Laws of Other States

51. Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

52. Defendant violated and continues to violate Florida's Deceptive and Unfair Trade Practices Act and similar laws of other States by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of its business.

53. The material misstatements and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff and the general public into believing that Defendant's Product is the only infant formula available that contains DHA and ARA, when in fact other, less expensive infant formulas also contain these nutrients.

54. Plaintiff and Class members relied upon these statements in deciding to purchase the Product. Plaintiff's reliance was reasonable because of Defendant's reputation as a reliable company.

55. Had Plaintiff known that other, less expensive brands of infant formula also contained DHA and ARA and in similar amounts, she would not have paid as much as she did for Defendant's Product and would have bought one of the less expensive brands.

56. As a result of Defendant's deceptive and unfair acts, Plaintiff and Class members have been damaged in the amount of the difference between the premium price paid for the Product and the price they would have paid had they not been led to believe, through Defendant's misleading advertising, that Defendant's Product was the only infant formula that provided DHA and ARA.

57. Defendant's conduct offends established public policy, and is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

58. Plaintiff and Class members are entitled to damages in an amount to be proven at trial, but not less than the difference between the premium price paid for Defendant's Product and the price charged for other, less expensive brands of formula that also contain DHA and ARA.

59. Defendant should also be ordered to cease its deceptive advertising, and should be made to engage in a corrective advertising campaign, to inform consumers that its Product is not the only brand of infant formula that contains DHA and ARA, and that other, less expensive brands of formula also contain these nutrients.

## COUNT II

### For False and Misleading Advertising in Violation of Fla. Stat. § 817.41 and Similar Laws of Other States

60. Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

61. On its website, on product labels, in print advertisements, in direct mailers, and in other forms of advertisements, Defendant made numerous misrepresentations of material fact, including:

00027147

11

  (a) That its Product is the only infant formula that has been clinically proven to improve brain and eye development in infants;

  (b) That its Product is the only infant formula that contains DHA and ARA; and

  (c) That DHA and ARA are not found in store brands and private labels.

 62. Defendant knew that these statements were false.

 63. Defendant made these statements for the purpose of selling property, and intended that consumers rely upon them in purchasing infant formula.

 64. Plaintiff and Class members did in fact rely upon these statements in purchasing formula. Reliance was reasonable and justified because of Defendant's reputation as a reliable company.

 65. As a result of Defendant's representations, Plaintiff and Class members suffered damages in the amount of the excess price paid for the Product, over and above what they would have paid had Defendant not led them to believe that its Product was the only formula that contained DHA and ARA.

 66. Plaintiff and Class members are entitled to damages and injunctive relief as set forth in Paragraphs 58 and 59 above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court:

 A. Certify this action as a Plaintiff class action;

 B. Award compensatory and punitive damages as to all Counts where such relief is permitted;

 C. Enjoin Defendant's conduct and order Defendant to engage in a corrective advertising and labeling/disclosure campaign;

 D. Award equitable monetary relief, including restitution;

 E. Award pre-judgment and post-judgment interest at the legal rate;

  F. Award Plaintiff and Class members the costs of this action, including reasonable attorneys' fees and expenses; and

  G. Award such other and further legal and equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 15, 2011      THE WRIGHT LAW OFFICE, P.A.
               WILLIAM C. WRIGHT


               By:   s/William C. Wright
                  WILLIAM C. WRIGHT


301 Clematis Street, Suite 3000
West Palm Beach, FL 33401
Telephone: 561/514-0904
561/514-0905 (fax)
willwright@wrightlawoffice.com

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD
THOMAS J. O'REARDON II
600 B Street, Suite 1550
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com

BONNETT, FAIRBOURN, FRIEDMAN
 & BALINT, P.C.
Elaine A. Ryan
Patricia N. Syverson
2901 N. Central Ave., Suite 1000
Phoenix, AZ 85012
Telephone: 602/274-1100
602/798-5860 (fax)
eryan@bffb.com
psyverson@bffb.com

        WHATLEY DRAKE & KALLAS
PATRICK J. SHEEHAN
60 State Street, Seventh Floor
Boston, MA  02109
Telephone: 617/573-5118
617/573-5090 (fax)
psheehan@wdklaw.com

Attorneys for Plaintiff

Case 0:09-cv-61625-JIC   Document 139   Entered on FLSD Docket 03/15/2011   Page 15 of 16

00027147       14

CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 15, 2011.

                                                s/William C. Wright
                                                WILLIAM C. WRIGHT

THE WRIGHT LAW OFFICE, P.A.
WILLIAM C. WRIGHT
301 Clematis Street, Suite 3000
West Palm Beach, FL 33401
Telephone:  561/514-0904
561/514-0905 (fax)
willwright@wrightlawoffice.com